# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHU H. KIM, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-83WES |
| | : | |
| JORDAN REALTY, *et al.*, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Brought pursuant to 42 U.S.C. § 1983 (Count II), as well as pursuant to state law, including R.I. Gen. Laws §§ 44-9-1, *et seq.* (Count I), and common law negligence (Count III), this case challenges the constitutional and statutory sufficiency of notices sent by Defendant Pawtucket Water Supply Board ("PWSB") in advance of the 2016 tax sale of property located at 46 Amey Street, Pawtucket, Rhode Island ("46 Amey Street").[1] Based on the alleged inadequacy of the 2016 tax sale notices and on a challenge to the constitutionality of the procedure for subsequently raising inadequate notice as a defense set forth in R.I. Gen. Laws § 44-9-11(c),[2] the complaint asks this Court to vacate the 2018 Rhode Island Superior Court final decree of foreclosure of all rights of redemption and to declare the tax deed for 46 Amey Street

---

[1] Only PWSB is sued on a claim arising under the Constitution and laws of the United States pursuant to 28 U.S.C. § 1331. Because that claim (Count II, based on § 1983) confers original jurisdiction, pursuant to 28 U.S.C. § 1367(a), the Court has subject matter jurisdiction over the pendent state law claims not only against PWSB, but also the state law claims in the non-diverse complaint-in-intervention and the state law claims against the non-diverse pendent party defendant, Defendant Jordan Realty, which is named only on Counts I and IV.

[2] The constitutionally challenged subsection of R.I. Gen. Laws § 44-9-11 provides as follows:

> Once a petition [for foreclosure of redemption] is filed under § 44-9-25, and any party in interest entitled to notice of the tax sale receives actual notice of the pendency of the petition to foreclose, the party must raise the notice defense in accordance with the provisions of § 44-9-31 or be estopped from alleging lack of notice in any action to vacate a final decree entered in accordance with § 44-9-30.

R.I. Gen. Laws § 44-9-11(c).

void *ab initio*.  It also alleges that, after the tax sale, rent has been collected for the use of 46 Amey Street, giving rise to a state law claim based on larceny (obtaining of property by false pretenses) pursuant to R.I. Gen. Laws § 11-41-4 (Count IV).

Now pending before the Court are dueling dispositive motions.  Defendant Jordan Realty ("Jordan Realty"), the buyer at the tax sale, has filed a motion to dismiss (ECF No. 7) based on Fed. R. Civ. P. 12(b)(1) and 12(b)(6),[3] while Plaintiff Chu H. Kim ("Kim"), the taxpayer and former owner of 46 Amey Street, has moved for summary judgment (ECF No. 11) on all four Counts of his complaint.  Both motions are referred to me for report and recommendation.  28 U.S.C. § 636(b)(1)(B).  For the reasons that follow, I find that Kim's § 1983 claim, grounded in his right to procedural due process, is without merit and that both the undisputed facts and the well-pled facts in the complaint establish that Kim is estopped from challenging the tax sale or Jordan Realty's ownership of 46 Amey Street.  Therefore, I recommend that Kim's motion for summary judgment be denied and that Jordan Realty's motion to dismiss be granted.

I.    INTRODUCTION

The operative facts laid out in the complaint (ECF No. 1, "Compl.") may be briefly summarized.  Until November 9, 2016, title to 46 Amey Street was vested in Plaintiff Kim. Compl. ¶ 1.  After bills issued by PWSB for water usage at 46 Amey Street became overdue and remained unpaid, PWSB published and posted a notice of tax sale in various locations and mailed it to Kim at various addresses, including by certified mail to Kim at 46 Amey Street itself, as well as to Kim's mailing address of record in the offices of PWSB pursuant to R.I. Gen.

---

[3] Jordan Realty's motion cites Fed. R. Civ. P. 12(b)(5); at the hearing, Jordan Realty's counsel explained that was a typographical error; he clarified that Jordan Realty relies on Fed. R. Civ. P. 12(b)(6).

Laws § 44-9-9 through 11.[4]  However, PWSB did not mail or deliver the notice to Kim's residence in East Providence, which Kim alleges PWSB "knew, or reasonably should have known" was his mailing address.  Compl. ¶ 21.  Kim claims that, because it did not, there was "confusion and delay of receipt by the appropriate party."[5]  Id. ¶¶ 23-24.  As a result, he asserts that the 2016 tax sale notice was legally insufficient and not in accordance with minimum constitutional requirements.  On November 9, 2016, 46 Amey Street was sold at public auction to Defendant Jordan Realty.  Id. ¶¶ 2, 5-9.

Just over a year later, pursuant to R.I. Gen. Laws § 44-9-25, Jordan Realty filed a petition to foreclose Kim's right of redemption in the Superior Court.  Jordan Realty v. Kim, Case No. PM-2017-5447 ("Jordan Realty v. Kim").  Under the Rhode Island statutory scheme for tax sales, this proceeding in the Superior Court provides the taxpayer with a full-blown opportunity to raise any "notice defense" he might have arising from any inadequacy – whether or not of constitutional dimension – tainting the pre-tax sale notice.  R.I. Gen. Laws § 44-9-11(c).  However, for any party who was entitled to notice of the tax sale and who got "actual notice of the pendency of the petition to foreclose," it is also the last chance – the defense of inadequate pre-tax sale notice must be raised in this proceeding in the Superior Court or the taxpayer is "estopped from alleging lack of notice in any action to vacate a final decree."  Id. (emphasis supplied).

_____

[4] Rhode Island's statutory scheme for tax sales also requires notice to the mortgagee.  R.I. Gen. Laws § 44-9-11.  In compliance, PWSB sent the pre-tax sale notice by certified mail to Kim's mortgagee, M&T Bank.  Kim's complaint challenges the adequacy of notice to M&T Bank because the notice was not sent to the address designated for property tax bills.  Compl. passim.  However, M&T Bank has never complained of inadequate notice; it failed to act prior to the tax sale, failed to appear in the Superior Court foreclosure proceeding and has not asserted any claim in this case or otherwise.  At the hearing, Kim conceded that he lacks standing to raise due process claims on behalf of M&T Bank.  The allegations in Kim's complaint purportedly on behalf of M&T Bank will not be discussed further.

[5] More recently, in connection with his motion for summary judgment, Kim submitted an affidavit averring that he did not receive the 2016 notice from PWSB and was unaware of the "the time and place" of the 2016 tax sale.  ECF No. 11-3 at 42-43 ("Kim Aff. ¶ 6").

For 46 Amey Street, Jordan Realty served the notice of the petition for foreclosure by certified mail as required by R.I. Gen. Laws § 44-9-27, and by personal service (served by a constable on Kim's spouse, a "person of suitable age") at his East Providence residence pursuant to R.I. Super. Ct. R. 4(e)(1).[6]  Compl. ¶ 13.  Despite being a party who had "receive[d] actual notice of the pendency of the petition to foreclose," R.I. Gen. Laws § 44-9-11(c), Kim opted not to answer the petition, not to appear in the Superior Court proceeding, not to attend the Superior Court hearing and not to argue to the Superior Court that PWSB's notice of the tax sale was inadequate.  See Compl. ¶ 29.  Following the Superior Court hearing (held on February 21, 2018), on February 28, 2018, the Superior Court issued its final decree forever foreclosing and barring Kim's right of redemption with respect to 46 Amey Street.  Compl. ¶ 30 & Exs. 6, 7.

For a taxpayer who did not receive "actual notice of the pendency of the petition to foreclose," the Rhode Island statutory scheme allows one more chance to raise a due process deprivation arising from a tax sale.  Specifically, § 44-9-24 permits such a taxpayer to bring a "separate action" to vacate the Superior Court final decree within one year[7] following its entry.  R.I. Gen. Laws § 44-9-24.  However, the § 44-9-24 grounds are limited, as relevant here, to the "inadequacy of notice of the petition amounting to a denial of due process."  Id.  Despite having received "actual notice," Kim has invoked § 44-9-24; on February 21, 2019, almost one year after the entry of the Superior Court's final decree, Kim filed his complaint in this Court.

Counts I and II of Kim's complaint allege that the tax sale of 46 Amey Street to Jordan Realty is void and Jordan Realty's deed is a nullity because PWSB failed to provide Kim with

---

[6] Kim does not dispute that in-hand service on his wife resulted in his receipt of actual notice pre-hearing of the pendency of the 2018 petition.

[7] Soon after the final decree entered in Jordan Realty v. Kim, R.I. Gen. Laws § 44-9-24 was amended to reduce the time for a motion to vacate from one year to six months, effective as of July 10, 2018.  R.I. P.L. 2018, ch. 351, § 1. Because the Jordan Realty v. Kim final decree entered on February 28, 2018, the one-year limitation period is applicable here.

constitutionally or legally sufficient notice of the 2016 tax sale. In connection with these notice-based claims, Kim challenges the constitutionality of R.I. Gen Laws § 44-9-11(c), which provides that, for him as a person with actual notice, the Superior Court petition proceeding was his last opportunity to raise the notice defense. He argues that R.I. Gen Laws § 44-9-11(c) is "nothing more than a contrivance and an artifice . . . deliberately designed to make an 'end run' around, and circumvent the impropriety of, an underlying tax sale by a municipal authority in which notice is void *ab initio*." ECF No. 9 at 12. Therefore, Kim contends, § 44-9-11(c) is unconstitutional, both facially and as applied in the circumstances of this case. Count III is based on state law negligence by PWSB only. The viability of Count III has not been challenged by the pending motions. Count IV accuses Jordan Realty of larceny because it collected rent in connection with the use of 46 Amey Street in reliance on the tax sale deed.

Not mentioned in Kim's complaint and complicating Kim's standing to assert these arguments are the allegations in the complaint filed by the Intervenor, Henry George. ECF No. 25. George claims that he had been residing at 46 Amey Street with Kim's permission and that, beginning in August 2016 (approximately three months before the tax sale), Kim defrauded him by agreeing to sell 46 Amey Street and accepting payments totaling $97,000 made through August 2018, while failing to disclose that 46 Amey Street was about to be and then had been sold at a tax sale. Id. ¶¶ 4-8, 12. George has sued Kim for fraud in the Superior Court. George v. Kim, PC-2019-8297 (filed Aug. 8, 2019). Because Kim seeks to have Jordan Realty's title to 46 Amey Street voided, George filed a complaint-in-intervention here to preserve his claim to a superior right of ownership. Kim has failed to answer George's complaint-in-intervention, which was filed on January 28, 2020; as of this writing, he is in default. George has not joined Kim's claims against either PWSB or Jordan Realty; he has not argued that any of the notices

sent to Kim in connection with the tax sale of 46 Amey Street are constitutionally or statutorily inadequate. Rather, he alleges that Kim was supposed to pay all municipal assessments until the sale to him was consummated and that Kim "failed to take the necessary action to maintain said property as a result of the tax sale." ECF No. 25 ¶¶ 10, 13.

Without waiting for discovery, Kim and Jordan Realty have both filed dispositive motions.

First, Jordan Realty responded to the complaint with a motion to dismiss all claims (Counts I and IV) against it. ECF No. 7.[8] Invoking Fed. R. Civ. P. 12(b)(6), it argues that Kim's challenge to the 2016 pre-tax sale notice fails because, as a party with "actual notice" who chose to fail to answer or appear, he is estopped and forever foreclosed and barred from raising any notice defense, include lack of due process, by the Superior Court's 2018 final decree in the proceeding on the petition to foreclose  Alternatively, invoking Fed. R. Civ. P. 12(b)(1), Jordan Realty contends that this Court lacks jurisdiction because the case runs afoul of the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA").  It also asks the Court to abstain based on Younger v. Harris, 401 U.S. 37 (1971).

Kim opposes Jordan Realty's motion, arguing that PWSB's notice of the 2016 tax sale was not made in a manner reasonably likely to inform affected persons and that Jordan Realty's notice of the 2018 petition is flawed because it was not ordered by the Superior Court as required by R.I. Gen Laws § 44-9-27; but see ECF No. 12-1 at 1 (Justice Keough orders that Jordan Realty be allowed to make personal service).  Despite his receipt of actual notice in 2018 and an opportunity to be heard in the Superior Court regarding his challenge to the adequacy of PWSB's

---

[8] While it filed a vigorous opposition to Kim's motion for summary judgment, PWSB did not join Jordan Realty's motion to dismiss.  However, during the hearing, it concurred in the gravamen of Jordan Realty's factual and legal presentation.

2016 notice, he argues that R.I. Gen. Laws § 44-9-11(c) is an unconstitutional "flimsy expedient" that cannot cure the taint of the inadequate 2016 notice. ECF No. 9 at 13.

Also pending is Kim's motion for summary judgment (ECF No. 11), against both PWSB and Jordan Realty, on all four Counts of the complaint. Kim contends that the undisputed facts establish that PWSB's 2016 notice was not sent to his residence or his mailing address, depriving him of his constitutional right to procedural due process pursuant to <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80-81 (1972). Therefore, he argues, he is entitled to judgment as a matter of law. Jordan Realty and PWSB both oppose the summary judgment motion on the merits. In addition, Jordan Realty relies on Fed. R. Civ. P. 56(d). To the extent that the Court determines that the constitutional sufficiency of PWSB's 2016 pre-tax sale notice is material and not irrelevant because of Kim's receipt of actual notice of the petition to foreclose, it asks the Court to defer consideration of Kim's summary judgment motion to allow time for discovery regarding many genuine factual disputes, including the reasonableness of PWSB's efforts to give notice of the 2016 tax sale, whether Kim is the real party in interest with respect to 46 Amey Street, whether it was really Kim who was updating PWSB on his address for 46 Amey Street and the truthfulness of Kim's denial that he got adequate notice of the 2016 tax sale. The parties have not yet engaged in any discovery, so all these matters remain unexplored.

## II.    FACTUAL AND STATUTORY BACKGROUND[9]

As with so many of the cases involving a taxpayer who has lost his property at a tax sale, it is necessary to recount the "tangled facts and extensive proceedings" that ultimately led these

---

[9] These facts are based on the parties' submissions. Jordan Realty supported its motion to dismiss and its opposition to summary judgment with undisputedly authentic publicly available documents from the municipal records of the city of Pawtucket and the docket of the Superior Court; it buttressed its opposition to summary judgment with an email string authenticated by Jordan Realty's counsel who was privy to the exchange. ECF Nos. 7-2, 12-1. In addition to the complaint and its attachments, Kim relies on his Statement of Undisputed Facts (ECF Nos. 11-1 to 11-3), cited as "Kim SUF," including his affidavit, cited as "Kim Aff." PWSB's Statement of Undisputed Facts (ECF Nos. 21-2, 23) is cited as "PWSB SUF."

parties to this Court.  Medeiros v. Bankers Tr. Co., 38 A.3d 1112, 1113 (R.I. 2012).  This more

detailed (than in the Introduction, *supra*) recitation sweeps well beyond the pleadings,

encompassing all that the parties have presented in support of and in opposition to Kim's

summary judgment motion.  The Court reminds the reader that the parties have not yet engaged

in discovery; therefore, this telling of the story is punctuated by factual lacunae and matters that

remain undeveloped and unexplained.  Except as noted, these facts are undisputed.

　　　The undisputed facts establish that Kim lives at 23 White Avenue, East Providence; for

approximately thirty years, he has been the owner of a Pawtucket used car business located at

707 Broadway, Pawtucket, and has bought and sold real estate in Pawtucket.  Kim SUF ¶¶ 1, 4 &

Exs. 4-6; ECF No. 9 at 7.  On February 10, 2004, by a single deed, Kim acquired title to two

adjacent Pawtucket real estate parcels on the other side of Broadway from his used car business –

46 Amey Street and contiguous property located at 720 Broadway.  ECF No. 12-1 at 3-4 (deed).

The recorded deed for this transfer lists the respective property addresses as "46 Amey Street"

and "720 Broadway."  Id. at 4.  Despite R.I. Gen. Laws § 34-11-1.2, which requires that "[e]very

deed presented for record shall contain or have endorsed upon it the name, residence and/or post

office address of the grantee," Kim did not include an address for himself on this deed.

　　　As a "collector of taxes," R.I. Gen. Laws § 44-9-4, PWSB maintains records in its office

establishing the addresses to be used for taxpayer mailings in connection with water usage.  After

Kim had acquired 46 Amey Street in 2004, the first address of record (as far as the Court filings

reveal) at PWSB's office for the water bills associated with 46 Amey Street was Kim's residence

– 23 White Avenue in East Providence.  PWSB SUF ¶ 1 & Ex. A.  This address continued to be

the taxpayer's mailing address for 46 Amey Street in the records of PWSB until October 21,

2009.[10]  Kim also continued to own the contiguous property, 720 Broadway, until 2009.  See Kim SUF Ex. 4.

On October 21, 2009, PWSB's public record reflects that the address designated for the taxpayer associated with 46 Amey Street was changed to "Chu Kim, c/o Henry George, 46 Amey St, Pawtucket, RI."[11]  PWSB SUF ¶ 1 & Ex. A.  Next, on July 6, 2011, the PWSB public record reflects that the address designated by the taxpayer was changed again, this time to "Chu Kim, 720 Broadway, Pawtucket, RI," the address of the contiguous parcel Kim had acquired at the same time as 46 Amey Street, but sold in 2009.  PWSB SUF ¶ 2 & Ex. B.  After the 2011 change, 720 Broadway continued to be the taxpayer address of record at PWSB's office for the rest of the period in issue.[12]  During the hearing on the pending motions, Kim's attorneys argued that Kim did not authorize any of the changes to the address of record at PWSB for 46 Amey Street and that he does not know who made the changes.[13]

_____

[10] Based on its public records, PWSB disputes Kim's vague averment that PWSB sent "any notices" in "previous years" to 707 Broadway, the address of Kim's used car business.  Kim Aff. ¶ 7.  PWSB's undisputed factual proffer confirms that, from 2018 back at least to 2009, 707 Broadway was never the mailing address of record at PWSB for 46 Amey Street.

[11] The reader will recall that Henry George is the Intervenor in this case, who has claimed that he was residing at 46 Amey Street.  Because Kim is in default on answering the George complaint, it is not known whether this allegation is disputed.

[12] The PWSB record address for the taxpayer of 46 Amey Street was changed twice more in 2018, after the 2016 tax sale.  The first such change was made only ten days after Kim was personally served with the notice of the Superior Court petition and eleven days before the Superior Court hearing in Jordan Realty v. Kim.  Specifically, on February 5, 2018, the PWSB public record reflects a change in the taxpayer's name from Chu Kim to Chu Hong Kim; the address remained "720 Broadway."  PWSB SUF ¶ 3 & Ex. C.  Eight months later, on October 11, 2018, the taxpayer address was changed from "720 Broadway" back to "46 Amey Street."  PWSB SUF ¶ 4 & Ex. D.  This change was made less than three weeks before 720 Broadway was sold to an entity named Elite Event Services LLC.  Kim SUF Ex. 4.  Kim's attorneys argued that Kim did not authorize either of these changes and that Kim does not know who made them.  Neither the complaint nor Kim's affidavit factually supports this argument.

[13] As with the 2018 changes to the PWSB address of record, neither the complaint nor Kim's affidavit factually supports this argument.  This is one of the "facts" that Jordan Realty argues is hotly contested.  That is, if the Court accepts that the argument of Kim's attorneys is sufficient to establish a material fact, Jordan Realty contends that it should be afforded time for discovery pursuant to Fed. R. Civ. P. 56(d) to rebut Kim's position that, from 2009 through 2018, the address of record for 46 Amey Street was repeatedly changed and he had nothing to do with, and was unaware of, the changes.  See n.14 infra.

9

On September 19, 2016, PWSB issued a notice letter of an outstanding balance of $1,357.80 in water charges for 46 Amey Street. PWSB SUF ¶ 5 & Ex. F ("notice letter"). According to the notice letter, unless the water charges were paid, with interest, costs and expenses, 46 Amey Street would be advertised for sale on October 17, 2016, and would be sold at public auction on November 9, 2016. Id. In compliance with In re Pontes, 310 F. Supp. 2d 447, 458 (D.R.I. 2004), the pre-tax sale notice letter advised of the right to redeem the property for at least one year following the tax sale and that, after one year, a petition to foreclose the right of redemption could be filed in the Superior Court, foreclosing the right to redeem forever if a final decree entered. PSWB SUF ¶ 5 & Ex. F. Kim does not criticize the content of PWSB's notice letter.

Section 44-9-9 of Rhode Island General Laws requires that a notice of a tax sale must be posted in two public places three weeks before the sale. PWSB amply complied with this requirement by posting printed notices in Pawtucket City Hall, the Pawtucket Public Library and the PWSB office, as well as at two public places in Central Falls and two public places in Cumberland. PWSB SUF ¶ 7 & Ex. G. Section 44-9-9 also requires publication of a tax sale in a public newspaper for four weeks. PWSB complied with this requirement by publishing the notice in The Times. Id. Kim does not challenge PWSB's compliance with the requirements of R.I. Gen. Laws § 44-9-9. However, he claims that they were not effective, in that, as he avers, he "never had actual knowledge of[] the time and place of the tax sale." Kim Aff. ¶ 6. Jordan Realty contends that this averment is disputed.[14]

---

[14] Although Jordan Realty failed to submit an affidavit or declaration to support its Fed. R. Civ. P. 56(d) arguments, if this issue ultimately is deemed to be material, the Court notes that the factual record regarding what Kim actually knew about the 2016 tax sale is clearly undeveloped and very confusing. By way of just one example, Kim's complaint alleges that "[t]he actions and omissions of the PWSB . . . caused confusion and delay of receipt by the appropriate party, thereby prejudicing Kim," Compl. ¶ 24, while Kim's affidavit avers that he never got the 2016 notice letter from PWSB, but is silent as to, for example, whether he got it from the Intervenor, George, whose complaint-in-intervention alleges that he was residing at 46 Amey Street when PWSB mailed the notice to that

In addition to the posted and published notices, the statutory scheme also imposes on the municipality the obligation to give pre-tax sale notice by mail to the taxpayer. R.I. Gen. Laws § 44-9-10. Specifically, the notice letter must be sent by regular mail ninety days before the tax sale and again by certified mail at least forty days before the tax sale. Id. § 44-9-10(a). Section 44-9-10(a) mandates that the notice letter is sent "to the street address of the real estate liable for payment of taxes" – PWSB correctly complied by mailing the notice letter, certified, to "Chu H. Kim, 46 Amey Street." Compl. ¶ 6. In addition, if there is a "different" address, R.I. Gen. Laws § 44-9-10(a) provides that the notice letter must also be mailed to at least one other address. The municipality may comply with this notice provision by mailing the notice letter to "the taxpayer's address listed with the tax assessor's office of the city or town where the real estate is located."[15] Id. Because PWSB's address of record for 46 Amey as of September 2016 was 720 Broadway, PWSB SUF ¶ 2 & Ex. B, PWSB correctly complied with this requirement by mailing the notice letter, certified, to 720 Broadway. Compl. ¶ 6; see R.I. Gen. Laws § 44-9-11(a) (notice of tax sale must be sent to parties in interest such as present owner of record, "subject to the notice requirements of § 44-9-10"). There is no evidence permitting the inference that PWSB was advised by the post office or otherwise learned that these certified mailings were unclaimed or refused.

Kim avers that he did not receive from PWSB either the notice letter mailed to 46 Amey Street or the notice letter mailed to 720 Broadway, and that he did not have actual pre-tax sale

---

address. See Kim Aff. ¶ 6; ECF No. 25 ¶¶ 4-8, 12. Based on this confusion, if the Court does not adopt my recommendation that Kim's awareness of the 2016 tax sale's place and time is irrelevant as a matter of law, I alternatively recommend that Jordan Realty's Fed. R. Civ. P. 56(d) request for discovery be sustained.

[15] Section 44-9-10(a) also offers the municipality other options. For example, it may opt to mail the notice letter to the taxpayer by using "any other address which the taxpayer designates by written notice to the tax assessor," or "the address of the taxpayer stated on the deed," or the letter can be left at "the last known address of the taxpayer" or "personally served on the taxpayer." R.I. Gen. Laws § 44-9-10(a). With an address of record for Kim, PWSB opted to mail the notice to 46 Amey Street and to 720 Broadway, which is consistent with the language of § 44-9-10(a).

notice of the time and place of the auction.  Kim Aff. ¶ 6.  He argues that it should have been "clear" to PWSB that he did not live at or receive mail at 46 Amey Street and that PWSB should have done more research before the tax sale, which would have revealed that he actually lived at 23 White Avenue in East Providence.  See Compl. ¶ 21.  PWSB's answer denies the accuracy of this assertion.  ECF No. 6.  Jordan Realty argues that these facts are disputed and, to the extent that they are deemed relevant, urges the Court to delay acting on the summary judgment motion to allow discovery to explore them.[16]

On November 9, 2016, the auction was held and 46 Amey Street was sold to Jordan Realty.  The tax sale deed was recorded in the Pawtucket land records on December 15, 2016.  ECF No. 7-2 at 1-2 ("tax sale deed").[17]  The deed is denominated "Pawtucket Water Supply Board Collector's Deed"; it properly recites the undisputed steps PWSB took to give notice of the tax sale to Kim.  Id.; see R.I. Gen. Laws § 44-9-12 (tax sale deed is *prima facie* evidence of facts essential to validity of sale).  Pursuant to R.I. Gen. Laws § 44-9-21, this tax sale remained subject to Kim's right to redeem 46 Amey Street, a right he was free to exercise any time until

---

[16] See n.14 *supra*.

[17] On the same day, a second deed almost identical to the first was recorded in the Pawtucket lands records.  Kim SUF ¶ 4 & Ex. 1.  It differs from the tax sale deed only in that one of the references to 46 Amey Street has a typographical error; specifically, it recites that one of the notices was sent "46 Array Street," although all other references in this second version of the tax sale deed, including the conveyancing language, correctly name 46 Amey Street.  This version of the tax sale deed, as proffered by Kim, appears to be unsigned.  At the hearing, Jordan Realty's counsel represented to the Court that all notices and all court proceedings have been based on the typo-free fully executed tax sale deed in the record at ECF No. 7-2 at 1-2; Kim's counsel did not dispute this representation.  Nor did Kim's counsel point to any way in which the deed with the typographical error impacted the adequacy of the notice he received of the tax sale, other than to argue that it suggests confusion about what was the right address to receive the notices.  The problem with this argument is that the proffered facts do not establish any such confusion, in that there is no dispute that the tax sale notice was sent to "Chu Kim, 46 Amey Street," as required by R.I. Gen. Laws § 44-9-10(a).  Kim's argument is not that the notice was mailed to 46 Array Street, but that he did not receive from PWSB the notice that was mailed to 46 Amey Street.  In short, this typographical error is neither "substantial" nor "misleading" and had no impact on the due process or statutory notice afforded to Kim.  See Mortg. Elec. Registration Sys., Inc. v. DePina, 63 A.3d 871, 881 (R.I. 2013).  It will not be discussed further.

the filing of a petition to foreclose. And such a petition could not be filed until "one year from a sale of land for taxes." R.I. Gen. Laws § 44-9-25(a).

Shortly after one year later (on November 14, 2017), pursuant to R.I. Gen. Laws § 44-9-25(a), Jordan Realty filed <u>Jordan Realty v. Kim</u>, the Superior Court petition to foreclose Kim's unexercised right of redemption. Compl. Ex. 1. A notice of the filing of the petition was also placed in the public land records in Pawtucket. ECF No. 7-2 at 3. Pursuant to R.I. Gen. Laws § 44-9-27(a), the citation setting the return date issued by the Superior Court clerk in <u>Jordan Realty v. Kim</u> was served by certified mail sent to all named respondents found by the court-appointed title examiner; this notice was mailed to Kim at 46 Amey Street and 720 Broadway. Compl. ¶¶ 11-13 & Exs. 2, 5. In addition, as permitted by order of the Superior Court dated November 27, 2017, (ECF No. 12-1 at 1), the citation was personally served on Kim by a duly authorized constable. Compl. ¶ 13(a) & Ex. 4. The constable's return of service reflects that, on January 25, 2018, it was left at Kim's residence at 23 White Avenue in East Providence with Kim's wife, Jeong Kim. <u>Id.</u>

The undisputed facts not only confirm that Kim received actual notice of the pendency of the petition, but also establish that, a week after the citation was served, counsel for Jordan Realty received an email inquiry from an attorney representing Kim asking about the redemption figure for 46 Amey Street.[18] ECF No. 7-2 at 14-16. Jordan Realty's counsel mailed the requested information on February 5, 2018.[19] <u>Id.</u> at 14. On February 13, 2018, Jordan Realty's

---

[18] Jordan Realty included these facts in its filings and by representation of its counsel of the hearing. Because the attorney at the hearing before me is the same attorney who spoke directly to the attorney representing Kim and who engaged in email and mail communication with her, I accepted his representation on the record without requiring the filing of a separate declaration. Kim did not dispute any of these facts.

[19] As noted *supra*, on the same day, February 5, 2018, it is undisputed that someone altered Kim's name of record in PWSB's office from Chu Kim to Chu Hong Kim, but leaving 720 Broadway as Kim's address of record. PWSB SUF ¶ 3 & Ex. C. Kim's counsel argued at the hearing that Kim was not aware of, or responsible for, this change.

attorney emailed Kim's attorney again, providing her with a copy of the Superior Court Omnibus Assignment form, notifying her of the hearing set for 2:00 p.m. on February 21, 2018. Id. at 16-17.

Despite R.I. Gen. Laws § 44-9-11(c), which is clear that, for a taxpayer with "actual notice" of the petition, a notice defense to a tax sale is lost forever unless raised in response to the petition, and despite having had actual notice, not only of the pendency of the petition, but also of the precise date and time of the Superior Court hearing, Kim did nothing. He did not appear in the Superior Court proceeding, he did not file an answer and he made no effort to assert his claim that PWSB's tax sale notice was not constitutionally or statutorily adequate. The hearing was held before Associate Justice Lamphear on February 21, 2018, and on February 28, 2018, the Superior Court entered the final decree "forever foreclos[ing] and barr[ing]" "all rights of redemption." Compl. ¶ 31 & Ex. 7.

Kim filed the complaint in this case on February 21, 2019. For reasons not explained by the record, it apparently was not served until June 2019. On June 28, 2019, PWSB appeared and, on July 10, 2019, Jordan Realty appeared and filed its motion to dismiss.

III.    KIM'S MOTION FOR SUMMARY JUDGMENT

Having received actual notice in 2018 of the pendency of the petition to foreclose and the Superior Court hearing, Kim's motion for summary judgment (ECF No. 11) focuses instead on PWSB's use in 2016 of the addresses mandated by R.I. Gen. Laws § 44-9-10 to mail the notice letter for the tax sale, arguing that PWSB should have investigated further and, if it had, it should have figured out that the notice letter needed to be mailed to Kim at his residence in East Providence. Kim also argues passionately that R.I. Gen. Laws § 44-9-11(c) is unconstitutional, both facially and as applied in this case. However, he does not explain why, particularly where §

44-9-11(c) estops only a taxpayer (like Kim) who received actual notice of the pendency of the petition, thereby presenting him with a full-blown opportunity to a hearing to seek a remedy for the alleged inadequacy of PWSB's notice.

**A.      Standard of Review**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56).  A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  The evidence must be in a form that permits the court to conclude that it will be admissible at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The court must examine the record evidence in the light most favorable to the nonmoving party; it must not weigh the evidence or reach factual inferences contrary to the opposing party's competent evidence.  Tolan v. Cotton, 572 U.S. 650, 660 (2014). If the movant demonstrates the absence of a genuine dispute of material fact, then the nonmoving party must set forth "specific facts sufficient to deflect the swing of the summary judgment scythe."  Mulvihill v.  Top-Flight Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

**B.      Law and Analysis**

"Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'"  Burns v. Conley, 526 F. Supp. 2d

235, 243-44 (D.R.I. 2007) (quoting <u>Jones v. Flowers</u>, 547 U.S. 220, 223 (2006)); <u>see</u> <u>Fuentes</u>, 407 U.S. at 80 ("'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"). However, due process does not require that a property owner receive actual notice before the government may take his property. <u>Burns</u>, 526 F. Supp. 2d at 244 (citing <u>Dusenbery v. United States</u>, 534 U.S. 161, 170 (2002)). Rather, it requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950); <u>Izzo v. Victor Realty</u>, 132 A.3d 680, 688 (R.I. 2016).

Consistent with these constitutional principles, the Rhode Island statutory scheme for tax sales (R.I. Gen. Laws § 44-9-1, *et seq.*) is designed in two phases to "strike[] a fair balance between the interests of the government and private property rights." <u>Albertson v. Leca</u>, 447 A.2d 383, 388 (R.I. 1982). In response to a long line of judicial decisions, Chapter 9 of Title 44 has been calibrated to accommodate the taxpayer's right to due process while respecting the municipality's need for finality. <u>Izzo</u>, 132 A.3d at 689; <u>see, e.g.</u>, <u>In re Pontes</u>, 310 F. Supp. 2d at 458 (holding that taxpayer must receive notice of right of redemption at beginning of tax sale process; statute already amended to require such notice by time of issuance of decision); <u>Sycamore Prop., LLC v. Tabriz Realty, LLC</u>, 870 A.2d 424, 427-28 (R.I. 2005) (noting importance of due process for taxpayer and finding pre-amendment version of R.I. Gen. Laws § 44-9-24 permitted due process challenge to notice of tax sale, notice of foreclosure petition or both). The interest of the buyer at the tax sale is also an important consideration. <u>Johnson v. QBAR Assocs.</u>, 78 A.3d 48, 53 (R.I. 2013) ("one of the goals of the tax sale statute is to 'afford a measure of stability to tax titles'"); <u>Medeiros</u>, 38 A.3d at 1118-20 ("to allow a property to 're-

vest' in a defaulted party after the final decree has been entered would result in 'the purpose of achieving stabilization tax titles [being] completely frustrated' . . . [and] would only invite an unnecessary cascade of legal proceedings following a redemption foreclosure").

In the first phase of the Rhode Island tax sale process, the municipality has the responsibility to give notice to the taxpayer and other parties in interest. R.I. Gen. Laws §§ 44-9-9 to 11. But once it has done so as required by law (including sending certified mail to specified addresses), unless it is aware that the mailing has been returned as unclaimed, it is not required to do more and is allowed to move swiftly to sell a property burdened with unpaid taxes without going to court. R.I. Gen. Laws § 44-9-1, *et seq.*; see Izzo, 132 A.3d at 688 n.5 (notice by mail is adequate (unless mailing returned to sender as unclaimed) even if it fails to achieve actual notice) (citing Jones, 547 U.S. at 226); Amy Realty v. Gomes, 839 A.2d 1232, 1235 (R.I. 2004) (when tax collector sent certified mail to addresses specified in statute, it was error for hearing justice to "place[] the onus on [it] to do more than what it was statutorily required to do"; fact that tax collector could have investigated to give better notice was "irrelevant to the propriety of the notice they received"). That is, as long as the tax collector is not aware that the mailing was ineffective, further action to achieve actual notice is not required. See Burns, 526 F. Supp. 2d at 243-44.

After the property is sold, the second phase begins. For at least one year following the tax sale, the buyer is at risk of the taxpayer exercising rights to redeem and otherwise to challenge the validity of the tax sale, including for defects in the municipality's notice. R.I. Gen. Laws §§ 44-9-21, 25. At the end of the year, the burden to give notice a second time shifts to the buyer who must initiate a Superior Court proceeding to foreclose the taxpayer's right of redemption. R.I. Gen. Laws §§ 44-9-21, 25(a). At this second phase, only if the buyer succeeds

in giving "**actual** notice" to the taxpayer can it obtain closure through entry of a final decree. Burns, 526 F. Supp. 2d at 242 (citing Norwest Mortg., Inc. v. Masse, 799 A.2d 259, 262-63 (R.I. 2002)) (emphasis in original). Further, in the Superior Court proceeding, a taxpayer who gets actual notice of the pendency of the petition not only can redeem, but also remains free to attack the validity of and seek to void the tax sale, including, *inter alia*, based on inadequate notice provided by the municipality. Karayiannis v. Ibobokiwe, 839 A.2d 492, 492-94 (R.I. 2003) (per curiam) (describing robust Superior Court hearing following actual notice of petition to foreclose); Quinn Tr. v. Ruiz, 723 A.2d 1127, 1128-29 (R.I. 1999) (trial held following actual notice of petition for foreclosure; tax sale voided due to lack of notice at first phase).

While affording the taxpayer who got actual notice of the pendency of the foreclosure proceeding a robust opportunity to be heard, R.I. Gen. Laws § 44-9-11(c) also protects the interest of the buyer (who has succeeding in giving actual notice) in finality. It achieves this balance by providing that the taxpayer with actual notice who opts to sleep on his rights and does not appear to raise the notice defense loses the defense forever. R.I. Gen. Laws § 44-9-11(c)[20]; see also R.I. Gen. Laws §§ 44-9-30, 31 (foreclosure proceeding is opportunity for taxpayer to exercise right to redeem or to challenge validity of tax sale). The constitutionality of this approach was endorsed by the Rhode Island Supreme Court in Kildeer Realty v. Brewster Realty Corp., 826 A.2d 961, 967 (R.I. 2003), which holds that, even if notice was not properly given by the municipality in the first phase, after actual notice of the petition for foreclosure, the "equitable concerns militate against vacating the final foreclosure decree," so that failure of owner to appear and answer "forever bars that party from later contesting the validity of the tax

---

[20] It is worth noting that R.I. Gen. Laws § 44-9-11 was found to be unconstitutional in 1999 because it did not provide for mail or personal notice. Quinn, 723 A.2d at 1129. After Quinn, § 44-9-11 was amended to mandate more robust notice. P.L. 2002, ch. 140, § 1.

title." In Kildeer, the court noted that the municipality had not even tried to notify the mortgagee of the tax sale; nevertheless, it held that "[a]ny previous defects in the notice procedure of the tax sale were negated by [mortgagee's] subsequent failure to answer or appear upon notice of the petition to foreclose its rights of redemption." Id. at 966. That is, as long as a taxpayer has actual notice of the petition to foreclose, he is "therefore . . . accorded sufficient due process to overcome any constitutional challenge." Id.

The Rhode Island courts – both state and federal – have repeatedly endorsed the Kildeer holding that this aspect of the scheme is constitutional in that it allows the municipality to move quickly to obtain by sale the taxes due, all while affording the owner an adequate opportunity to redeem his real estate or to invalidate the tax sale. E.g., Burns, 526 F. Supp. 2d at 242 (contrasting constitutional injury to party with "complete lack of notice" of both tax sale and petition to foreclose with lack of constitutional injury to party who has proper notice of petition but failed to act); Johnson, 78 A.3d at 52-54 (rejecting challenge to Rhode Island tax sale statute as unconstitutionally vague; citing Kildeer with approval); Norwest Mortg., Inc., 799 A.2d at 262-63 (challenge to tax sale barred because secured creditor received proper notice of foreclosure proceeding but failed to file answer); Sura Realty Corp. v. Park Realty Tr., No. Civ.A. PM98-5535, 2004 WL 422815, at *3 (R.I. Super. Ct. Feb. 18, 2004) ("Rhode Island Supreme Court has repeatedly held that a party's failure to comply with the mandatory provisions of the Tax Sale Statute by timely 'responding to a petition to foreclose the rights of redemption forever bars the party from contesting title or otherwise challenging the tax sale procedures' . . . even if he or she can demonstrate that notice of the initial tax sale was deficient.").

Consistent with these principles, this Court has entered judgment based on a due process violation in favor of taxpayers who got no notice, neither of the tax sale nor of the pendency of the petition. Burns, 526 F. Supp. 2d at 237-38 (due process denied when town did not supply notice of tax sale and buyer at tax sale did not supply notice of petition to foreclose). Importantly, before invalidating the tax sale deed based on the denial of due process, Burns focused specifically on the second phase of the statutory scheme, finding that the tax sale buyer had failed even to name the owners on the petition to foreclose; it held that this "failure to identify and provide notice to [owner] was both substantial and misleading." Id. at 243 (citing Kildeer, 826 A.2d at 966). On the other hand, as the Rhode Island Supreme Court held in DePina, "[o]ur case law has consistently prevented those who previously held an interest in property sold at a tax sale from attacking a final decree of foreclosure when they have been properly noticed of the foreclosure proceedings but have failed to take action . . . to protect their redemption rights." 63 A.3d at 877. Kildeer is clear that it is based on the importance of striking the right balance between the taxpayer's right to due process and the municipality's need for finality, as well as the equitable concerns of the buyer who had to wait a year and is entitled to rely on the finality of the decree. 826 A.2d at 967 (citing Albertson, 447 A.2d at 388).

Kim does not advance the argument that Kildeer was wrongly decided. Apart from a string of hyperbolic labels ("contrivance," "artifice," "artificial reality," "repugnant," "flimsy expedient," "illusory," ECF No. 9 at 12-13), Kim presents nothing to buttress his argument that R.I. Gen. Laws § 44-9-11(c), with its strict requirement of "actual notice" and its preservation of the right to invalidate the tax deed and to seek other remedies due to the failure of pre-tax sale notice, is somehow unconstitutional. He essentially concedes that he was afforded "[t]he fundamental requisite of due process of law[,] . . . the opportunity to be heard . . . [after] . . . one

is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Mullane, 339 U.S. at 314.

The Mullane/Kildeer principles are dispositive of Kim's due process claims in this case. Whatever may have happened with PWSB's mailings, it is undisputed that Kim received actual notice[21] of the pendency of the petition to foreclose and, like the mortgagee in Kildeer, opted to do nothing, "utterly fail[ing] to protect [his] interest or assert [his] rights 'on for before the return day.'" Kildeer, 826 A.2d at 966. In the Superior Court, Kim could – and should – have raised all the arguments he has presented to this Court, such as his contention that PWSB's procedure for accepting changes to the address of record for a taxpayer is inadequate. And if he did not achieve a satisfactory outcome from the Superior Court, his due process-based appeal could have been taken to the Rhode Island Supreme Court, and from there on to the United States Supreme Court if the state persisted in endorsing an unconstitutional procedure. For a person with actual notice of the pendency of the petition to foreclose, this is the proper path to remedy an alleged due process deprivation. See Budge v. Arrianna Holding Co., Civil Action No. 13-0056(CCC), 2013 WL 4045782, at *3 (D.N.J. Aug. 8, 2013) (plaintiff whose property was sold for unpaid taxes and who then defaulted on foreclosure complaint may appeal through state court and then to United States Supreme Court). As an "inferior federal court," this Court is barred by the Rooker-Feldman doctrine from entertaining Kim's due process challenge. Id.

---

[21] While conceding that he had actual notice, Kim argues that his notice of the pendency of the petition was nevertheless somehow deficient because there was no Superior Court order permitting Jordan Realty to serve him by hand as required by R.I. Gen. Laws § 44-9-27. ECF No. 9 at 9. This argument is rejected because the order permitting notice by personal service is a matter of public record, as Jordan Realty demonstrated on reply. ECF No. 12-1 at 1. Kim also argues the certified mailings made by Jordan Realty (consistent with the requirement of the court-appointed title examiner) went only to 46 Amey Street and 720 Broadway and not to 23 White Avenue or to his (unspecified) "mailing address." Compl. ¶ 26. This argument is rejected because the statutory requirement is to send the certified mail as directed by the title examiner, which is what Jordan Realty did. R.I. Gen. Laws § 44-9-27(a). In any event, with actual notice by personal service at his residence, these arguments are insufficient to state a claim.

Boiled down to its essence, this case poses the question of whether due process is offended by the balance achieved through Rhode Island's tax sale scheme as implemented with respect to 46 Amey Street. Finding that it is not, my recommendation is that the Court need not go further and that Kim's motion for summary judgment on all four Counts of his complaint should be denied.[22] That is, there is no need to consider the adequacy of PWSB's 2016 notice in isolation – even if the Court were to find that the undisputed facts establish that PWSB's service of the pre-tax sale notice was so ineffective as to amount to a deprivation of due process (which they do not),[23] Kim's summary judgment motion still fails because he had actual notice of the pendency of the petition and an opportunity to be heard, yet failed to raise what he now contends was a due process violation.

## IV.  JORDAN REALTY'S MOTION TO DISMISS

---

[22] Kim's motion for summary judgment presented a reasoned and factually supported argument only as to Counts I and II. Accordingly, I recommend that his motion be denied for failing to sustain his Fed. R. Civ. P. 56 burden as to Count III (negligence against PWSB) and Count IV (larceny against Jordan Realty). In addition, as to Count IV, Kim's substantive claim that Jordan Realty was not entitled to collect rent fails as a matter of law because it depends on the viability of his claim that Jordan Realty's deed to 46 Amey Street is invalid. Based on my recommendation *infra* that the Court find that the complaint establishes that Kim is estopped from challenging the validity of Jordan Realty's deed, it follows that he also is barred from challenging Jordan Realty's appropriate exercise of its rights as the owner of 46 Amey Street. For this reason, too, Kim's motion for summary judgment as to Count IV is without merit and should be denied.

[23] To the extent that the Court decides that Kim's motion for summary judgment requires consideration of the adequacy of PWSB's pre-tax sale notice, I still recommend that it should be denied, whether because the Court finds that PWSB's efforts were sufficient as a matter of law or because the Court concludes that there are material disputed facts. With respect to the former, this case is very different from Burns and Kildeer, where the municipality unambiguously failed to comply with minimal standards. Here, the undisputed facts establish that PWSB fully complied with all of the notice requirements in R.I. Gen. Laws § 44-9-9 to 11, by posting, publishing and mailing the notice, certified, to 46 Amey Street itself and to the address of record for 46 Amey Street (720 Broadway); nor is there a scintilla of evidence permitting the inference that PWSB was aware that the certified mailings were inadequate because the notices were returned as unclaimed. As to the latter, and at best for Kim, there is a factual dispute regarding the adequacy of PWSB's efforts, potentially requiring a trial regarding the integrity of PWSB's procedures for maintaining the address of record for a taxpayer, Kim's veracity in denying awareness of the tax sale, and Kim's relationship and communications with his tenant, Intervenor George, who was living at 46 Amey where one of the tax sale notices was sent. See n.14 *supra*. Kim must also overcome the holding of Jones, 547 U.S. at 235-36, that the municipality is not required to search for a taxpayer's true address, especially when a statute obligated the taxpayer to keep his address of record current. With no PWSB motion asking the Court to resolve whether Kim's claims against it should be disposed of by summary judgment, I have not attempted to resolve this issue – whichever is right, Kim's summary judgment motion fails.

Echoing the Court's summary judgment analysis, Jordan Realty's motion to dismiss (ECF No. 7) is laser focused on Kim's admitted receipt of actual notice of the "pendency of the petition," which afforded him constitutionally adequate notice of his opportunity to come to Superior Court and assert his argument that PWSB's notice of the tax sale was not sufficient, as well as to make any other challenges he might wish to assert to the validity of the tax sale. Invoking both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Jordan Realty moves for dismissal of all claims against it (Count I and IV) because, even when the Court examines the complaint in isolation from the more expansive record compiled for Kim's summary judgment motion, it is crystal clear that the pleading establishes that Kim has waived his right to raise a statutory or constitutional challenge to the Superior Court foreclosure proceedings pursuant to Kildeer. And because Kim does not have a viable claim nullifying the validity of the tax sale deed, Kim's Count IV – claiming that Jordan Realty committed larceny in collecting rent for 46 Amey in reliance on its deed – is also without merit.

A threshold matter – because it goes to the Court's jurisdiction – is Jordan Realty's argument that the case should be dismissed pursuant to the TIA and Younger. I find that the TIA is not applicable. See Coleman through Bunn v. D.C., 70 F. Supp. 3d 58, 67-68 (D.D.C. 2014) (TIA bars only claims "in which state taxpayers seek federal-court orders enabling them to *avoid paying state taxes*.") (quoting BellSouth Telecomms. v. Farris, 542 F.3d 499, 501 (6th Cir. 2008)) (emphasis in original); Burns, 526 F. Supp. 2d at 240-241 (TIA no barrier to federal court consideration of challenge to tax sale due to inadequate notice). Nor do I find availing Jordan Realty's argument in support of Younger abstention. See Sirva Relocation LLC v. Richie, 794 F.3d 185, 192 (1st Cir. 2015) (Younger abstention doctrine applies only to ongoing state proceedings). Therefore, it is appropriate to proceed to the merits of Jordan Realty's motion.

**A.      Standard of Review**

To avoid foundering in the face of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a pleading must allege a plausible entitlement to relief that gives the opposing parties fair notice of the claim and the grounds on which it rests.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).  The Court must determine whether the well-pled facts, taken as true, are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

**B.      Analysis**

Kim's complaint recites that he was personally served with the Superior Court citation (directing him to answer the petition for foreclosure) by a constable who delivered it to Kim's wife, "a person of suitable age and discretion," at Kim's East Providence residence, 23 White Avenue, and that the Superior Court thereafter considered the matter on February 21, 2018, following which it entered the final decree.  Compl. ¶¶ 13(a), 17, 30.  The complaint concedes that Kim failed to answer the petition.  Id. ¶ 29.  While the complaint alleges that PWSB's pre-tax sale notice was insufficient, claiming that PWSB should have known that the notice letter should have been mailed to 23 White Avenue, Id. ¶¶ 21-22, it is devoid of factual allegations plausibly undermining the constitutional sufficiency of Kim's notice and opportunity to be heard in the Superior Court regarding his allegation that PWSB's notice was inadequate.  Therefore, pursuant to Kildeer, the complaint fails to state a plausible claim against Jordan Realty.  Because

Kim was afforded due process, he is now estopped by his own inaction to challenge Jordan

Realty's deed.  Therefore, I recommend that the Court grant Jordan Realty's motion and dismiss

Counts I and IV as to it.

**V.      CONCLUSION**

Based on the foregoing, I recommend that the Court deny Kim's motion (ECF No. 11)

for summary judgment, and that the Court grant Jordan Realty's motion (ECF No. 7) to dismiss,

eliminating all claims against Jordan Realty and terminating it as a party in this case.  If this

recommendation is adopted, Kim's damage claims against PWSB remain pending (Counts I, II

and III), provided that they would likely also be subject to dismissal should PWSB choose to

make a motion challenging them.  George's complaint-in-intervention against Kim also remains

pending until the Court disposes of the PWSB claims.

Any objection to this report and recommendation must be specific and must be served

and filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P.

72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes

waiver of the right to review by the district judge and the right to appeal the Court's decision.

<u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v.</u>

<u>Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 27, 2020